UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MARK DINALLO,

                Plaintiff,                       **MEMORANDUM AND ORDER**
                                                                  17-CV-6939 (RRM)

    -against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

       On January 14, 2020, the Court granted plaintiff Mark DiNallo's motion for judgment on the pleadings in this Social Security case and entered a judgment remanding the matter to defendant Commissioner of Social Security ("the Commissioner") for further administrative proceedings. After obtaining a fully favorable decision from the Commissioner on remand and shortly after receiving a Notice of Award of past-due benefits, Seelig Law Offices, LLC, ("Seelig") – the law firm that successfully represented plaintiff before this Court pursuant to contingency-fee arrangement – moved for an order awarding attorney's fees in the amount of $31,700 pursuant to 42 U.S.C. § 406(b). For the reasons set forth below, the Court finds $31,700 to be reasonable and grants Seelig's motion, but orders Seelig to pay plaintiff the $6,557.71 it has already received in fees pursuant to the Equal Access to Justice Act ("EAJA").

## BACKGROUND

       In March 2014, plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, alleging that he had been disabled since January 30, 2013. His claims were initially denied, and he requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Robert Dorf who, in a decision dated July 22, 2016,

found that plaintiff was not disabled.  Plaintiff then requested that the Appeals Council review the ALJ's decision, but that request was denied on September 29, 2017.

Although plaintiff had been represented during the administrative proceedings, he commenced this action pro se in November 2017.  About eight months later, plaintiff retained Seelig to represent him before this Court and in any further administrative proceedings.  On July 24, 2018, plaintiff executed a retainer agreement which provided that plaintiff would pay Seelig a contingency fee of "25% of all retroactive or past due social security disability benefits awarded" to him.  (Retainer Agreement (Doc. No. 24-1) (emphasis omitted)).

On October 9, 2018, Seelig filed a motion for judgment on the pleadings on plaintiff's behalf, including a 30-page memorandum of law.  On April 18, 2019 – about six months after the motion and defendant's cross-motion for judgment on the pleadings had been submitted – the Court ordered the parties to confer and prepare a stipulation of facts.  That 17-page stipulation was submitted on May 8, 2019.

In a Memorandum and Order dated January 14, 2020, the Court granted plaintiff's motion, denied defendant's cross-motion, and entered judgment remanding this matter to the Commissioner for further administrative proceedings.  Approximately one month later, the parties submitted a stipulation and proposed order awarding plaintiff $6,557.71 for attorney's fees and expenses pursuant to the EAJA.  Although the Retainer Agreement did not contain any provisions relating to the EAJA fees, plaintiff apparently agreed to transfer his rights to EAJA fees to his attorney.

More than 15 months after this matter was remanded, the Commissioner determined that plaintiff had been disabled from January 30, 2013.  On July 27, 2021, the Social Security Administration ("SSA") sent plaintiff a Notice of Award (the "NOA"), informing him that he

2

was receiving past-due benefits for the months from July 2013 – six months following the onset of disability – until May 2021 – the month after the fully favorable decision was rendered. (Notice of Award (Doc. No. 24-2) at 1–2.) Although the Notice of Award stated that plaintiff would receive a check for $195,409.12, (*id.* at 1), it did not specify the exact amount of the past-due benefits.[1] However, it stated that plaintiff's attorney could "ask the court to approve a fee no larger than 25 percent of past due benefits," and that the Social Security Administration was withholding $65,136.38 for that reason. (*Id.* at 2.)

      The Instant Motion

On August 9, 2021, Seelig filed the instant motion for attorney's fees pursuant to 42 U.S.C. § 406(b). In the Memorandum of Law in Support of the Motion (the "Memo"), the law firm stated that the Retainer Agreement "explicitly authorized attorney's fees under 42 U.S.C. §406(b), up to 25% of past-due benefits." (Memo at 1.) Although the NOA suggested that the past-due benefits were in excess of $260,500, Seelig requested $31,700 – less than half of the amount withheld by the Social Security Administration. Seelig noted that it intended to file an administrative fee petition under 42 U.S.C. § 406(a) with the SSA, which would compensate for their work at the administrative level. (Memo at 2.) The law firm also noted that the $6,557.71 it had received from the SSA pursuant to the EAJA would be credited to plaintiff in the event that the Court granted the instant motion. (Memo at 8.)

In support of its motion, Seelig submitted a one-page affirmation signed by one of its partners, Richard B. Seelig. The Seelig Affirmation provided no information about the firm or the attorneys who worked on this case. However, it attached time records which indicated that

---

[1] The Notice of Award notes that the check may not reflect the full amount of the past-due benefits because the SSA is required to "deduct certain amounts, such as Medicare premiums and worker's compensation offset." (Notice of Award at 1.)

attorneys at the firm had spent a total of 31.7 hours on the case. Those time records, which the Seelig Affirmation called an "EAJA Chart," reflected an hourly rate of $202.24 in 2017. (EAJA Chart (Doc. No. 24-3).) The hourly rate increased by a few dollars annually, eventually reaching $210.07 in 2020. (*Id.*)

Defendant has filed a response to the instant motion (the "Response"). That submission concedes that the motion "appears timely filed," (Response (Doc. No. 26) at 2), and that "there is no evidence of fraud or overreaching" in the negotiating the Retainer Agreement, (*id.* at 3). However, the Response emphasizes that the Commissioner "has <u>no direct financial stake</u>" in outcome of this motion and only "plays a part in the fee determination <u>resembling that of a trustee for the claimants</u>." (*Id.* at 1 (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 798, n.6 (2002)) (emphasis in Response). Accordingly, the Response takes no position regarding whether to grant to motion but merely "requests the Court determine the reasonableness of the $31,700 Section 406(b) fee request." (*Id.* at 4.)

## STANDARD OF REVIEW

The Social Security Act "allows courts to grant reasonable attorney's fees for successful representation in Social Security actions." *Fields v. Kijakazi*, 24 F.4th 845, 852 (2d Cir. 2022). Specifically, the Act provides:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment ….

42 U.S.C. § 406(b)(1)(A). Parties who secure sentence four remand judgments in the district court have to "file § 406(b) motions for attorney's fees within the fourteen-day period specified in Rule 54(d)(2)(B)" of the Federal Rules of Civil Procedure, although "that period is tolled until

4

a benefits calculation is made on remand and notice thereof received by the parties." *Sinkler v. Berryhill*, 932 F.3d 83, 89 (2d Cir. 2019).

"Section 406(b) does not prohibit contingent fee agreements." *Wells v. Sullivan*, 907 F.2d 367, 369 (2d Cir. 1990). Indeed, the Supreme Court has noted that "the marketplace for Social Security representation operates largely on a contingency fee basis," *Gisbrecht*, 535 U.S. at 804, and that attorneys and clients "characteristically" enter into contingent-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled," *id.* at 803. However, while § 406(b) allows contingency agreements, it "gives no guidance as to how a court should treat them in determining a 'reasonable fee.'" *Fields*, 24 F.4th at 852 (quoting *Wells*, 907 F.2d at 369).

The Second Circuit and the Supreme Court have filled that void by "set[ting] out guidelines for courts conducting this reasonableness analysis." *Id.* at 849. Under these guidelines, courts "approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness." *Gisbrecht*, 535 U.S. at 808; *see Wells*, 907 F.2d at 371. The Second Circuit has "rejected reliance on 'the traditional lodestar method'" in determining whether an amount is reasonable. *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 371). "[B]ecause a successful social security claimant evaluates and pays his own attorney, … the best indicator of the "reasonableness" of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate determined under lodestar calculations." *Wells*, 907 F.2d at 371. However, a court "ought not blindly approve every fee request made pursuant to a contingent agreement." *Id.* at 372.

Both the Second Circuit and Supreme Court have listed several factors that a court should consider in evaluating the reasonableness of the contingency agreement. The Second Circuit has

5

"instructed courts to 'determine whether the contingency percentage is within the 25% cap' and then to consider 'whether there has been fraud or overreaching in making the agreement, and' … 'whether the requested amount is so large as to be a windfall to the attorney.'" *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 372). In *Gisbrecht*, the Supreme Court provided examples of factors a court might consider in conducting this reasonableness analysis:

> First, the [Supreme] Court pointed to the character of the representation and the results the representative achieved, noting that courts may reduce the requested fees where the representation is substandard. Second, the Court indicated that a reduction is appropriate where the attorney is responsible for delay, lest the attorney profit from the accumulation of benefits during a delay that the attorney caused. And third, a reduction may be in order if the benefits are large in comparison to the amount of time counsel spent on the case—the so-called 'windfall' factor ….

*Fields*, 24 F.4th at 853 (internal quotations and citations omitted).

## DISCUSSION

In this case, most of the factors do not require lengthy discussion. First, the contingent fee specified in the Retainer Agreement does not exceed 25% of the past-due benefits. Second, as the Commissioner concedes, there is no evidence of fraud or overreaching in the making of the agreement.

Third, Seelig's representation was not substandard and ultimately achieved the results plaintiff wanted. Plaintiff filed his application for disability insurance benefits in March 2014, alleging that he had been disabled since January 30, 2013. Although he was represented at the agency level, plaintiff had no success prior to retaining Seelig in late July 2018. Seelig not only convinced this Court to remand this matter the Commissioner, but vindicated his claims in the subsequent administrative proceedings, where plaintiff was found to have been disabled as of January 30, 2013 – as he had claimed. As a result of Seelig's efforts, plaintiff received a check

6

for almost $200,000 in past-due benefits and is presumably still receiving disability insurance benefits.

Fourth, Seelig obtained these results without delay. Seelig filed its motion for judgment on the pleadings in early October 2018 – less than two and one-half months after being retained. The law firm also promptly complied with the Court's April 18, 2019, order for a joint stipulation of facts, which was filed more than a week before the 30-day deadline.

The "Windfall" Factor

The so-called "windfall factor" requires a lengthier discussion. "In determining whether there is a windfall that renders a § 406(b) fee in a particular case unreasonable, courts must consider more than the de facto hourly rate." *Fields*, 24 F.4th at 854. The Second Circuit has identified four "factors to be considered" in making this determination. First, courts should consider "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do." *Id.* Second, "courts should consider the nature and length of the professional relationship with the claimant – including any representation at the agency level." *Id.* at 855. Although § 406(b) fees compensate counsel only for court-related work, "consideration of 'the time spent and work performed by counsel on the case when it was pending at the agency level' can inform a district court's understanding of 'the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved, and the significance of the result achieved in district court.'" *Id.* (quoting *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005)).

"A third factor to consider is the satisfaction of the disabled claimant." *Id.* "Finally, a fourth important factor to consider is how uncertain it was that the case would result in an award

7

of benefits and the effort it took to achieve that result." *Id.* at 855. Since contingency-fee arrangements make "payment for an attorney in a social security case … uncertain, … any reasonable fee award must take account of that risk." *Id.* at 855–56 (quoting *Wells*, 907 F.2d at 371).

After reviewing these factors, the Court is satisfied that the $31,700 requested by Seelig would not constitute a windfall. First, the law firm was particularly efficient. According to the firm's time records, Seelig's lawyers took only 22.2 hours to prepare plaintiff's Rule 12(c) motion: 1.1 hours to review the Commissioner's cross-motion; 2.5 hours to review the 457-page administrative record; 14.9 hours to research and draft the motion papers, including a 30-page memorandum of law; and 3.7 hours to edit and upload the submission. The firm spent only 2.7 hours reviewing and revising the 17-page joint stipulation of facts, and only 7 additional hours on all other tasks relating to this case.

Second, the Court notes that Seelig had a long and successful professional relationship with plaintiff, much of which occurred at the agency level after the Court remanded this matter. Although Seelig completed work on plaintiff's motion and the stipulation of facts by May 8, 2019 – about nine and one-half months after appearing before this Court – Seelig spent another eighteen and one-half months litigating at the agency level before the NOA was issued. This suggests that the case was indeed complex, required considerable effort and skill to obtain a fully favorable result, and involved a substantial risk that Seelig might fail and a receive no compensation at all for their efforts. It was not a case in which the lawyer engaged on a contingency-fee basis succeeds immediately and with minimal effort – the sort of case in which there was "very little risk of nonrecovery." *See* Fields, 24 F.4th at 856.

With respect to the third factor, Seelig's Memo does not divulge whether plaintiff was satisfied with the law firm's efforts. However, the Court notes that Seelig managed to obtain all the relief plaintiff sought in a timely manner – a result that should satisfy most reasonable clients. Furthermore, the record contains no indication that plaintiff, who has a direct financial stake in the fee determination, objects to the fee award.

Finally, the Court notes that when plaintiff retained Seelig, success in this case was far from certain. Plaintiff had already been litigating his disability claims for over four years and had been entirely unsuccessful at the agency level. The proceedings before the agency and the Commissioner's decision were not clearly flawed, as evidenced by the fact that defendant's counsel elected to file a cross-motion for judgment on the pleadings rather than a stipulation of remand. As a result, it took Seelig considerable effort and skill to secure a favorable result.

Although the $31,700 fee sought by plaintiff amounts to $1,000 for each of the 31.7 hours Seelig expended on this case, that fee is nonetheless reasonable in the context of this case. As noted above, there was a substantial risk that Seelig might be unsuccessful and receive no compensation for its efforts. The $1,000 fee, which might be considered high if awarded in a non-contingency case, was reasonable compensation in light of that risk. *See Fields*, 24 F.4th at 854 ("even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case.")

In addition, the Court notes that fee requested by Seelig is less than half of the amount to which the firm was entitled under the express terms of the Retainer Agreement. That agreement provided that plaintiff would pay Seelig "25% of all retroactive or past due social security disability benefits awarded" to him. The Notice of Award suggested that 25 percent of past due

9

benefits in this case amounted to $65,136.38.  (*See* Notice of Award at 2.)  Yet, Seelig is requesting only $31,700 – about 48.66% of the amount to which they are contractually entitled.

## CONCLUSION

For the reasons set forth above, the Court concludes that $31,700 constitutes a reasonable fee for Seelig's representation of plaintiff before this Court.  Accordingly, the Court grants Seelig's motion and awards the law firm $31,700 pursuant to 42 U.S.C. § 406(b).  However, since Seelig has already received $6,557.71 in EAJA fees for his work before this Court, the Court orders Seelig to refund that amount to plaintiff.  "An attorney may receive fee awards under both the EAJA and § 406(b), but where the attorney receives two fee awards for the same work, he must "refun[d] to the claimant the amount of the smaller fee." *Ward v. Kijakazi*, 20-CV-5412 (PGG)(JLC), 2023 WL 329210, at *2 (S.D.N.Y. Jan. 20, 2023) (quoting *Gisbrecht*, 535 U.S. at 796.)

SO ORDERED.

Dated:  Brooklyn, New York
         March 30, 2023

/s/ *Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge

10